**In re Rudy VALENTINE and Elnora Valentine, Debtors.**

**Bankruptcy No. 5–82–00771.**

United States Bankruptcy Court, D. Connecticut.

May 4, 1983.

Vincent J. Freccia, III, O'Rourke, Ambrogio & Freccia, P.C., Stratford, Conn., for debtor.

Daniel Meister, Norwalk, Conn., trustee.

## MEMORANDUM AND ORDER
## ON GOOD FAITH UNDER 11 U.S.C. § 1325(A)(3)

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

On July 2, 1982, the debtors filed a petition under Chapter 13 of the Bankruptcy Code. In their proposed plan and Chapter 13 Statement they included approximately $6,400.00 of secured and $25,000.00 of unsecured debts. Additionally, the debtors' Chapter 13 Statement shows a total monthly income of $1,634.00 against expenses of $1,427.00, leaving a monthly surplus of $207.00.

The debtors proposed to pay $157.00 per month to the trustee for sixty months which, after payments applied to the secured claims and the trustee's fee, would provide unsecured creditors with a 2.6 percent dividend. The trustee has recommended that the plan not be confirmed on the ground that the plan was not proposed in good faith because the 2.6% repayment is meaningless.

### II.

A bankruptcy judge must confirm a plan that meets the criteria set forth in 11 U.S.C. § 1325(a).[1] *In re Estus,* 695 F.2d 311, 314 (8th Cir.1982). In 1982, five circuit courts rejected the proposition that the "good faith" requirement of subsection (a)(3) is to be determined solely on the percentage of payments to unsecured creditors. *See In re Estus, supra; In re Deans,* 692 F.2d 968 (4th Cir.1982); *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982). In the most recent of those decisions, *In re Estus, supra,* the court agreed with the conclusions of the other circuit courts that subsection (a)(3) does not impose a rigid requirement of substantial payment to unsecured creditors, noting that

1. Section 1325 provides:

"(a) The court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan."

"if Congress desires to include a per se substantial requirement, it can do so." 695 F.2d at 316 n. 11. On the other hand, as the *Estus* court observed, a plan which meets the minimum requirements of subsection (a)(4) does not automatically satisfy the good faith test of subsection (a)(3). *Id.* at 316. Rather, bankruptcy courts must examine the facts and circumstances of each case to determine whether the proposed plan comports with the spirit and purpose of Chapter 13. *Id.*

■ The percentage of payment to unsecured creditors is clearly one of the key ingredients of a Chapter 13 plan. However, other factors may exist which would sustain a finding of good faith despite a minimal or even a zero payment. *Id.* at 317. *See, e.g., In re Bellgraph*, 4 B.R. 421, 6 B.C.D. 480 (Bkrtcy.W.D.N.Y.1980) (emphasizing the debtor's effort to save her home). The court in *Estus* provided a partial list of factors as a guide in determining whether the good faith requirement has been met.

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors.

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Id.* at 317 (citations omitted).

■ The plan before this court takes into account the limited earning ability of the debtors due to past employment and medical histories. There is no clear indication that earnings will increase in the future. The monthly budget and $50.00 monthly cushion is hardly extravagant considering the fact that the debtors have four minor children living at home. On the contrary, such a thin cushion raises a serious question as to whether this plan is feasible. *See* 11 U.S.C. § 1325(a)(6). I do not, however, reach that conclusion in view of the debtors' sincere determination to make this plan work. Here the debtors motivation for seeking relief is to save the family residence. Under these circumstances, I conclude that the debtors have satisfied the good faith requirement of section 1325(a)(3), notwithstanding the minimal proposed payment to unsecured creditors.

Since the other criteria of section 1325(a) have been met as well, the plan must be, and hereby is, confirmed.