**In re Susan K. FREEMAN, a/k/a Susan Kessell Freeman, a/k/a Susan Freeman Bigler, Debtor.**

**Bankruptcy No. 683–00860–C.**

United States Bankruptcy Court,
W.D. Virginia,
Charlottesville Division.

Oct. 30, 1986.

Ross W. Krumm, Charlottesville, Va., for debtor.

Francis McQ. Lawrence, Charlottesville, Va., for Jean Holliday.

Leroy R. Hamlett, Jr., Charlottesville, Va., for William Neufeld.

Helen P. Parrish, Charlottesville, Va., Trustee.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Bankruptcy Judge.

This matter is before the court on remand from the Fourth Circuit Court of Appeals for reconsideration of the confir-

mation of the Chapter 13 plan proposed by the debtor, Susan K. Freeman. *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986). The Fourth Circuit has specifically directed the court to consider the debtor's pre-petition conduct and recent discharge in a previous Chapter 13 in assessing whether the debtor's proposed plan comports with the general good faith confirmation standard imposed by 11 U.S.C. § 1325(a)(3). *Id.* at 153–154.

## BACKGROUND

The facts and procedural history of this case are generally set forth in the published opinion of the Court of Appeals, *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir. 1986). Familiarity with that opinion is presumed and only a brief sketch of the case's background is set out here. Additional details are provided in the court's discussion of the issues raised by the remand of this case.

On November 7, 1983 Susan K. Freeman (the "debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On February 10, 1984, shortly after two of the debtor's creditors, William Neufeld and Jean Holliday, had filed complaints to determine the dischargeability of their respective claims, the debtor converted her Chapter 7 proceeding to one under Chapter 13, and later filed the plan here in issue.

Neufeld has an allowed claim against the debtor in the amount of $30,403.10, based on a state court judgment for wrongful conversion. Neufeld's wrongful conversion action had arisen from the debtor's failure to return or otherwise account for numerous art objects and antiques that Neufeld had delivered to the debtor for appraisal and sale pursuant to a consignment agreement. Holliday's allowed claim of $458 [1] arose from the debtor's failure, also in breach of a consignment contract, to turn over to Holliday the proceeds from the sale of a manuscript Holliday owned. The debtor instead spent the proceeds for her own personal benefit.

---

1. On January 3, 1985 the court entered an order allowing Holliday's claim against the debtor in   the amount of $458.

Neufeld objected to the debtor's Chapter 13 plan, contending that it was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). In support of his objection, Neufeld pointed particularly to the debtor's conduct giving rise to Neufeld's claim and to the previous Chapter 13 discharge received by the debtor. This court, in a memorandum opinion dated December 14, 1984, dismissed Neufeld's objections and confirmed the plan, essentially declining to consider the debtor's pre-petition conduct. On appeal the district court affirmed, but the Court of Appeals disagreed with both courts, vacated the confirmation order and remanded for reconsideration, holding that the debtor's pre-petition conduct and recent discharge in a previous Chapter 13 are relevant factors to consider in making the § 1325(a)(3) good faith inquiry. At the hearing held on reconsideration of the confirmation, Holliday joined in Neufeld's objection to the plan as not being proposed in good faith in violation of § 1325(a)(3).

## DISCUSSION

Confirmation of a plan under Chapter 13 of the Code must rest upon a finding by the court that the plan comports with the six elements set forth in 11 U.S.C. § 1325(a). Neufeld and Holliday challenge the confirmation of the debtor's plan under § 1325(a)(3), which states that "the plan [must be] ... proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

The object of the good faith inquiry mandated by § 1325(a)(3) is to determine whether or not, considering "all militating factors", there has been "an abuse of the provisions, purpose, or spirit" of Chapter 13 in the proposal of a debtor's plan. *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982), *quoting* 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978). To determine whether a plan meets the general good faith standard of § 1325(a)(3), "the totality of circumstance must be examined on a case by case basis." *Deans v. O'Donnell*, 692 F.2d at 972.

In *Deans* the Fourth Circuit articulated, without attempting to be exhaustive, several factors relevant to the good faith inquiry. These factors include, depending on the particular case, the percentage of proposed repayment, the debtor's financial situation, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, the debtor's employment history, and any unusual or exceptional problems facing the particular debtor. *Id.*

In its decision remanding the present case for reconsideration the Fourth Circuit, as mentioned, provided two specific instructions. First, the Fourth Circuit expanded the *Deans* catalogue of factors to include a debtor's pre-petition conduct, directing the court to weigh this factor in the present case in making the good faith inquiry under § 1325(a)(3). As the Court of Appeals explained:

[w]here significant claims involve conduct that would raise serious Chapter 7 dischargeability issues, ... the quality of that conduct is part of the "totality of circumstances" which must be weighed, with other factors in assessing the debtor's good faith under Chapter 13

*Neufeld v. Freeman*, 794 F.2d at 153. Second, relying on the express reference in *Deans* to "the debtor's past bankruptcy filings" as a relevant factor in the § 1325(a)(3) inquiry, the Court of Appeals instructed the court to consider the debtor's recent discharge in a previous Chapter 13 case as possible evidence of bad faith in proposing her plan. *Id.*

An examination of the evidence in this case, in light of these two additional considerations, persuades the court that, under the totality of the circumstances, the debtor's plan nevertheless satisfies the good faith requirement of § 1325(a)(3).

Concededly, evidence of the debtor's pre-petition conduct and of her past bankruptcy filings lends an aura of bad faith to her proposed plan. The claims of the objecting creditors both arose from misconduct of the debtor. The debtor's wrongful conversion of Neufeld's property precipitated his

claim against the debtor, and the debtor's misuse of the proceeds from the sale of the manuscript resulted in Holliday's claim. Thus, the pre-petition conduct of the debtor arguably could subject these claims to a possible determination of nondischargeability in a Chapter 7 case. *See* 11 U.S.C. § 523(a)(4), (6). Furthermore, the debtor had received a discharge in a previous Chapter on August 3, 1983, barely three months prior to the commencement of her present bankruptcy, which she filed as a Chapter 7 and then converted to a Chapter 13 case soon after Neufeld and Hollidays commenced adversary proceedings to determine the dischargeability of their respective claims. The presence of these factors suggests that the debtor has manipulated the Code and sought refuge in her present Chapter 13 proceeding solely to avoid obligations grounded in dishonesty, thus tainting the debtor's plan with bad faith. The court's inquiry under § 1325(a)(3), however, does not stop at weighing only these two factors. As mentioned, the general good faith standard under § 1325(a)(3) requires the court to examine the totality of the circumstances, *Deans*, 692 F.2d at 972; therefore the court must make its determination based on all militating factors in the present case.

Several significant factors demonstrating that the plan has been proposed in good faith are present in this case. First, the debtor's plan contemplates substantial repayment to unsecured creditors. As the court determined in its earlier opinion, over the course of three years, the debtor's plan would likely repay unsecured creditors at least 30% of their claims. This proposed repayment indicates an honest attempt to repay debts rather than avoid, at minimal cost, otherwise nondischargeable obligations.

Further, the debtor's financial situation was pressing at the time she commenced her present bankruptcy proceeding. On the schedules accompanying her bankruptcy petition, the debtor lists debts totaling $129,807.91, while her non-exempt property only totals $52,791. Significantly, the claims of the two objecting creditors, Neufeld and Holliday, represent only slightly more than one-third of the debtor's total unsecured debt. These facts reveal that the debtor had ligitimate reason for re-filing for bankruptcy only three months after receiving a discharge in a previous Chapter 13.

Moreover, significant provisions of the plan reflect the debtor's earnest efforts to satisfy her creditors' claims. The debtor proposes to pay a substantial portion of her income into the plan. The plan provides, among other things, for the debtor to make payments of $250 monthly from her $382.50 net monthly income for a period of three years, the maximum duration permitted absent court approval of a longer period under 11 U.S.C. § 1322(c). Although the debtor's monthly income is based on only twenty hours of work per week, the debtor is raising three children, which obviously limits her ability to work longer hours. Thus, having an income based on twenty hours of work per week does not significantly detract from the determination that the debtor is making an earnest effort to repay her debts.[2] A second provision of the plan further underscores the debtor's diligent efforts. The plan provided for the sale of her home, the proceeds from which are now in the possession of the Chapter 13 trustee. Unsecured creditors are to receive a pro-rata share of the excess proceeds, almost $10,000, that now remain after payment in full of the debtor's secured creditors.

The cummulative effect of these factors militates against the inference, suggested by the evidence of the debtor's pre-petition conduct and of her past bankruptcy filing, that the debtor is attempting to manipulate

---

**2.** The court, in its prior memorandum opinion addressing Neufeld's objection, determined that the salary earned by the debtor was "reasonable for a woman of the debtor's background seeking part time work in the geographic area in which the debtor now lives." *In re Freeman*, No. 683–00860, slip op. at 4 (Bankr.W.D.Va. December 14, 1984). The court perceives no compelling reason to make a contrary finding on remand.

or abuse the provisions, purpose or spirit of Chapter 13 in the proposal of her plan. Indeed, the militating factors in this case amply demonstrate that the debtor's proposed plan represents a good faith effort to satisfy her creditors' claims in accordance with the provisions of Chapter 13.

CONCLUSION

For the foregoing reasons, the court concludes that the debtor has proposed her Chapter 13 plan in good faith as required by § 1325(a)(3). Accordingly, the court will enter an appropriate order dismissing the objections of Neufeld and Holliday and confirming the debtor's Chapter 13 plan.